UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SETH KILBURN and KORI KILBURN

                Plaintiffs,

   -against-                                    8:08-CV-00367 (LEK/DRH)

VILLAGE OF SARANAC LAKE,
SARANAC LAKE POLICE
DEPARTMENT, PATROLMAN JOHN
W. GAY, and SGT. WILLIAM J. COTE,

                Defendants.

## DECISION AND ORDER

Plaintiffs Seth Kilburn and Kori Kilburn commenced the present action in the Supreme Court of New York State, County of Franklin. On April 4, 2008, Defendants Village of Saranac Lake, Saranac Police Department, Patrolman John W. Gay, and Sergeant William J. Cote (collectively, "Defendants") removed the case to this Court pursuant to 28 U.S.C. § 1441 (b) and (c) and in accordance with 28 U.S.C. 1446. Notice of removal (Dkt. No. 1). Plaintiffs' action alleges federal and state law violations. See Cmplt. (Dkt. No. 1-1) ¶¶ 33, 36. Presently before the Court is Defendants' Motion seeking summary judgment and dismissal of Plaintiffs' Complaint. Defs.' Motion for Summ. J. (Dkt. No. 19). For the reasons discussed below, Defendants' Motion is granted.

**I.    BACKGROUND**

On March 5, 2007, Plaintiff Scott Kilburn ("Plaintiff")[1] was arrested by Patrolman John W.

---

[1] This action was brought collectively by Seth Kilburn and his wife, Kori Kilburn. Kori Kilburn's claims are derivative of the alleged violations suffered by her husband. See Cmplt. (Dkt.

Gay ("Gay") of the Village of Saranac Lake Police Department ("the Police Department"). Counter-Statement of Material Facts (Dkt. No. 20-12) at 4-5. Plaintiff was charged with Forcible Touching and Endangering the Welfare of a Child. N.Y. PENAL L. §§ 130.52; 260.10(1). Plaintiff's arrest followed a Law Enforcement Referral from the New York State Department of Social Services Child Abuse Hot Line received by the Police Department on March 1, 2007, detailing allegations of sexual abuse alleged to have occurred at the Saranac Lake Central School. Counter-Statement of Material Facts (Dkt. No. 20-12) at 2. The report, filed by Saranac Lake Middle School psychologist David Francis, identified Plaintiff as the suspected abuser and a minor student as the victim. Id. at 1-2. Upon receiving the information from the hot line, Patrolman Gay, under the direction of Sergeant Cote, proceeded to investigate the allegations. See Gay Depo. (Dkt. No. 20-2) at 24-38; Cote Depo. (Dkt. No. 20-3) at 18-19.

On March 1, 2007, Patrolman Gay interviewed the alleged victim at the Police Department.[2] Counter-Statement of Material Facts (Dkt. No. 20-12) at 3. The minor provided a sworn statement detailing the alleged abuse against him. Id. The minor's sworn statement recounted that on "two occasions Plaintiff grabbed him from behind in a 'strangle hold,' refused to let him go when he asked him to stop, and then reached around and patted and rubbed [his] private area." Id.

On March 5, 2007 Patrolman Gay spoke with Joshua Dann, the Dean of Students at Saranac Lake Central School. Id. During the conversation, Dann stated that he believed something had happened to the minor. Id. at 4. He did not, however, state that he believed something happened

---

No. 1-1) 37-40. Because the events at issue in the present Motion mainly relate only to Seth Kilburn, he shall be referred to as "Plaintiff." Where events relate to Kori Kilburn, she will be designated by name, or, Seth and Kori Kilburn will be referred to, collectively, as "Plaintiffs."

[2]The interview occurred in the presence of the minor's grandmother.

2

between Plaintiff and the minor, nor did he corroborate the report provided to the police. Id. Patrolman Gay then contacted Plaintiff Seth Kilburn and met with him at the Police Department. Id. Plaintiff waived his Miranda rights, and Patrolman Gay began to question Plaintiff about the alleged incident. Id. After the questioning began, Plaintiff invoked his right to counsel and Patrolman Gay ceased his questioning. Id. Plaintiff was then arrested, processed, and arraigned in the Harrietstown Town Court where bail was set. Id. at 5. Plaintiff was remanded to the custody of the County Sheriff pursuant to a Securing Order signed by the Honorable Thomas R. Glover. Id.

Two or three days after the arrest, Patrolman Gay received a phone call from Sergeant Scott Thurber ("Thurber"), a senior Sergeant for the Saranac Lake Police Department. Gay Depo. Dkt. No. 20-2) at 43, 45. During the phone call, Thurber told Gay that there was no probable cause to support Plaintiff's arrest, and that the he should not have been arrested. Id. at 46. Patrolman Gay disagreed, stating that he believed there was probable cause for the arrest. Id.

Following Plaintiff's arrest, Patrolman Gay continued to participate in the investigation, interviewing various individuals around March 8, 2007. Id. at 48. Sergeant Thurber joined the investigation on March 8, 2007. Id. at 47. Thurber took statements from Seth and Kori Kilburn, and interviewed various school officials, including a teacher who had previously suffered fabricated allegations by the alleged victim similar to those the minor was asserting against Plaintiff. Seth Kilburn Statement (Dkt. No. 20-4) at 1-2; Cote Depo. (Dkt. No. 20-3) at 32-33.

On September 5, 2007, Plaintiff's case was dismissed by the Honorable Paul Herrman without opposition from the District Attorney. Dkt. No. 20-7.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the

3

pleadings, depositions, answers to interrogations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Courts applying this standard must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). "Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." Brown, 257 F.3d at 251 (citation omitted).

**III.    DISCUSSION**

Plaintiffs' Complaint contains seven claims for relief variously alleging violations of state law, and, pursuant to 42 U.S.C. § 1983, violations of the Fourth and Fourteenth Amendment to the United States Constitution. See generally Cmplt. (Dkt. No. 1-1)  Specifically, Plaintiffs' allegations of false arrest, false imprisonment and malicious prosecution are brought under state law and as constitutional claims pursuant to  42 U.S.C. § 1983.  Id. ¶¶ 10-23, 32-36.  Plaintiffs' allegations of negligence, intentional infliction of emotional distress, and Plaintiff Kori Kilburn's derivative claim for loss of consortium are brought under state law.  See Id. ¶¶ 24-32; 37-40.

**A.    False Arrest and Imprisonment and Malicious Prosecution Claims**

Plaintiffs' claims of false arrest, false imprisonment and malicious prosecution are alleged as violations of both state and federal law.  As discussed below, the analysis for these claims when alleged as constitutional violations pursuant to 42 U.S.C. § 1983 essentially mirrors that of the associated state law claim.[3]  The Court will address these related claims together and then analyze Plaintiffs' purely state law claims of negligence, intentional infliction of emotional distress, and loss of society and services.

*i.    False Arrest and False Imprisonment*

Plaintiffs allege that on March 5, 2007, Plaintiff Seth Kilburn was falsely arrested by the Village of Saranac Lake, New York acting by and through members of its Police Department as its agents, including Patrolman Gay and Sergeant Cote. Counter-Statement  of Material Facts (Dkt.

---

[3] While the elements of the claims under § 1983 are "substantially the same" to those of state law, differences emerge with respect to liability and qualified immunity.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Based on the findings below, these differences are not material to the instant case.

No. 20-12) at 5. Plaintiffs assert that Defendants failed to adequately investigate the allegations against Seth Kilburn before arresting and charging him with Forcible Touching and Endangering the Welfare of a Child under New York State Penal Law §§ 130.52 and 260.10(1), respectively. Cmplt.¶ 12; Counter-Statement of Material Facts at 5 (Dkt. No. 20-12); Gay Aff. at ¶ 13; Gay Aff. Ex. D. Further, Plaintiffs allege that the arrest was made without sufficient probable cause. Cmplt. (Dkt. No. 1-1) ¶ 13.

A plaintiff may bring an action for false arrest under state tort law or pursuant to 42 U.S.C. §1983 based on unreasonable seizure in violation of the Fourth Amendment. The elements of the state and federal claims are substantially the same. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). "In New York, the tort for false arrest is synonymous with that of false imprisonment." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) (citing Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 473, 344 N.Y.S.2d 632, 638, 285 N.E.2d 871, 877 (N.Y. 1972)). The Court will, therefore, analyze Plaintiffs' First and Second Causes of Action, alleging false arrest and false imprisonment in violation of state law, simultaneously with that portion of Plaintiffs' Sixth Cause of Action alleging, pursuant to 42 U.S.C. § 1983, violations of the Fourth Amendment.

Under New York law, the elements of a false imprisonment or false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see also Posr, 944 F.2d at 97 (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314 (N.Y. 1975).

The parties agree that the first three elements of the false imprisonment claim are present. Only the fourth element, that the confinement was not otherwise privileged, is disputed. Where "there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful." Broughton, 37 N.Y.2d at 458, 373 N.Y.S.2d at 94, 335 N.E.2d at 315 (citing Smith v. County of Nassau, 34 N.Y.2d 18, 23, N.Y.S. 2d 349, 352, 311 N.E.2d 489, 492 (N.Y. 1974)); see also United States v. Rivera, 321 F.2d 704, 708 (2d Cir. 1963). However, the "existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the claim." Martinez v. City of Schenectady, 97 N.Y.2d 78, 85, N.Y.S.2d 868, 872-73, 761 N.E.2d 560, 564-65 (N.Y. 2001) (citing Broughton 37 N.Y.2d at 458, 373 N.Y.S. 2d at 95, 335 N.E.2d at 315); Bernard v. United States, 25 F.3d at 102. The burden is on the defendant to prove probable cause of the imprisonment. Broughton, 37 N.Y.2d at 458, 373 N.Y.S. 2d at 95, 335 N.E.2d at 315. Where the material facts are not in dispute, the existence of probable cause to support an arrest is a matter of law. See Colaruotolo v. Cohoes, 44 A.D.2d 616, 616, 353 N.Y.S.2d 542, 544 (Third Dep't 1974) *aff'd* 36 N.Y.2d 716, 367 N.Y.S.2d 485, 327 N.E.2d 638 (N.Y. 1975).

Probable cause exists when an "officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Curley v. Village of Suffern, 268 F.3d 65, 69-70 (2d Cir. 2001) (quoting Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)). The determination as to whether probable cause existed for an arrest is an objective inquiry that "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (citing Maryland v. Pringle, 540 U.S. 366,

371 (2003)). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer, 63 F.3d at 119 (referencing Miloslavsky v. AES Eng'g Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993) *cert. denied*, 510 U.S. 817 (1993). Further, "'once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" Curley, 268 F.3d 70 (quoting Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). "'Although a better procedure may [be] for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.'" Panetta v. Crowley, 460 F.3d 388, 396 (2d Cir. 2006) (quoting Curley, 268 F.3d at 70).

In the instant case, Plaintiff's arrest followed School psychologist David Francis' reporting alleged abuse to the New York State Department of Social Services hot line, which was referred to the Police Department. Counter-Statement of Material Facts (Dkt. No. 20-12) at 2; Docket 19-11 page 1. The report identified the location where the alleged abuse was thought to have occurred, the Saranac Lake Central School, identified a minor as the victim, and named Plaintiff Seth Kilburn as the alleged abuser. Id. After receiving the report, the police interviewed the alleged victim who provided a sworn statement describing the alleged acts of abuse. Id. at 3. After determining that the minor understood the difference between the truth and a lie, Patrolman Gay had the minor sign a statement detailing his allegations against Plaintiff. Cmplt. (Dkt. No. 1-1) ¶¶ 5-6. Further, the minor's guardian grandmother was present for the interview and stated that she believed Jackson

8

was telling the truth. Id. ¶¶ 4, 5. Additionally, before effecting arrest, Patrolman Gay contacted Joshua Dann, the Dean of Students at Saranac Lake Central School. who stated that he believed something had happened to the minor. Counter-Statement of Material Facts (Dkt. No. 20-12) at 3-4. After that conversation, Gay met with Plaintiff at the Saranac Police Department and began to question Plaintiff about incidents involving the minor before Plaintiff invoked his right to counsel. Id. at 4. Patrolman Gay received authorization from Sergeant Cote and only then arrested Plaintiff. Id. at 5; Cote Depo. (Dkt. No. 20) at 23.

Nevertheless, Plaintiffs allege that there was no probable cause to support the warrantless arrest of Plaintiff Scott Kilburn. Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. (Dkt. No. 20-11) at 12. Plaintiffs argue that after obtaining a statement from the complainant, officers waited four days before speaking with Dean Joshua Dann, and then, Dann did not confirm the minor's allegations. Id. Plaintiffs argue that officers failed to interview other school faculty members or other witnesses who would have revealed that the minor had previously lied about another teacher. Id. at 13. Further, Plaintiffs allege that officers did not corroborate the minor's story by speaking with other students in the class, nor did they ask about the minor's mental health. Id. Plaintiff argues that his arrest was ultimately based on Officer Gay's "feeling" that something had happened to the minor. Id. Finally, Plaintiffs argue that statements made by Sergeant Thurber stating that no probable cause existed for the arrest, constitute an admission by Defendants and raises a question of material fact regarding whether the Department had probable cause to arrest Plaintiff. Id. at 13-14.

The evidence makes clear that Plaintiff's arrest was supported by probable cause. The standard to determine whether probable cause exists is one of reasonableness. See Curley, 268 F.3d at 69-70; Calamia v. City of New York, 879 F.2d 1025, 1032 (2d. Cir. 1989). Based on the

information provided to Defendants through the hotline report, the alleged victim's statement, and other interviews, Defendants' belief that the sexual abuse had occurred was, as a matter of law, reasonable. Thus, probable cause for the arrest existed, and, contrary to Plaintiffs' assertions, Defendants were not required to explore every possible claim of innocence before arresting Kilburn. See Id. at 70.

Plaintiff argues that Sergeant Thurber's statement that probable cause did not exist is an admission on behalf of the Defendants and creates a question of material fact regarding whether probable cause existed for Plaintiff's arrest. Thurber's statement, made days later, does not affect the reasonable belief held by Patrolman Gay at the time of arrest. See Devenpeck, 543 U.S. at 153. Therefore, Defendants' Motion for summary judgment with respect to Plaintiffs' claims of false arrest and false imprisonment under state and federal law is granted.

    *ii.  Malicious Prosecution*

"The tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation." Broughton, 37 N.Y.2d at 457, 373 N.Y.S.2d at 93, 335 N.E.2d at 314. As with false arrest, a claim of malicious prosecution may be brought under state tort law or pursuant to 42 U.S.C. § 1983. Savino, 331 F.3d at 72. Where a plaintiff brings the action pursuant to § 1983, state tort law provides the underlying elements. See Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994). Plaintiffs' Third Cause of Action alleges malicious prosecution under state law; their Sixth Cause of Action alleges the same in violation of the Fourteenth Amendment. Cmplt. (Dkt. No. 1-1) ¶¶ 20-23, 32-36. As with its discussion of false arrest, the Court will treat these claims together.

A claim of malicious prosecution under New York State law, requires: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."[4] Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (quoting Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)); see also Broughton, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94, 335 N.E.2d at 314.

"Where the plaintiff institutes a malicious prosecution action he must plead the lack of probable cause." Broughton, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94, 335 N.E.2d at 314. Probable cause "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." Colon v. New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1250 (N.Y. 1983) (citing Hyman v. New York Cent. R. R. Co., 240 N.Y. 137, 143, 147 N.E. 613, 615 (N.Y. 1925)). As with false arrest, where the material facts are not in dispute in a claim of malicious prosecution, probable cause is determined as a matter of law. Colaruotolo, 44 A.D.2d at 616, 353 N.Y.S.2d at 544. Applying these principles, the Court finds that probable cause for the prosecution of Plaintiff did exist, and that Defendants are entitled to summary judgment with regard to Plaintiffs' state and constitutional claims of malicious prosecution.

As noted above, probable cause existed for the initial questioning and arrest of Plaintiff. Two or three days after arresting Plaintiff, Patrolman Gay received a call from Sergeant Thurber, who told Patrolman Gay "you didn't have any [expletive] probable cause" to arrest Plaintiff Kilburn. Gay Depo. (Dkt. No. 20 Exhibit 2). Although Sergeant Thurber did not speak directly with Sergeant Cote regarding what he believed to be a lack of probable cause, Cote was aware of Thurber's opinion. Cote Depo. (Dkt. No. 20, Ex. 3) at 33-35. Although Thurber later voiced his

---

[4] Probable cause appears to be the only element in dispute with regard to Plaintiffs' malicious prosecution claim. Mem. of Law in Supp. of Defs.' Mot. for Summ. J. (Dkt. No. 19-12) at 5. Accordingly, the Court will confine its discussion to that issue.

belief that probable cause did not exist to support Plaintiff's arrest, this does not affect the determination of whether probable cause existed, which depends solely "upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck, 543 U.S. 153 (citing Pringle, 540 U.S. at 371). Further, after the arrest, Defendants continued investigating the alleged abuse. In fact, Sergeant Thurber assisted with these efforts, taking the Plaintiff's sworn statement. Dkt. No. 20-4. Under the facts of this case, the Court finds that, as a matter of law, Defendants held an objectively reasonable belief in Plaintiff's guilt and sufficient probable cause existed to support their prosecution of Plaintiff. Accordingly, Defendants' Motion for summary judgment with respect to Plaintiffs' malicious prosecution claims under state law and the Fourteenth Amendment is granted.

### B.     Additional State Law Claims

#### i.     *Negligence*

Plaintiffs allege that Defendants acted negligently when they "arrested, incarcerated and prosecuted" Seth Kilburn without probable cause. See Cmplt. (Dkt. No. 1-1) ¶¶ 25-26. Under New York law, "a plaintiff may not recover under general negligence principles for a claim that a defendant failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." Coakley v. Jaffe, 49 F. Supp. 2d 615, 629 (S.D.N.Y. 1999), *aff'd*. 234 F.3d 1261 (2d Cir. 2000); see also Boose v. City of Rochester, 71 A.D.2d 59, 62, 421 N.Y.S.2d 740, 744 (4th Dep't 1979); Bernard, 25 F.3d at 102. Consequently, Defendants' Motion for summary judgment with respect to Plaintiffs' negligence claim is granted.

#### ii.    *Intentional Infliction of Emotional Distress*

Plaintiffs allege that Defendants engaged in intentional infliction of emotional distress when

they intentionally arrested and charged Seth Kilburn with criminal acts without conducting an adequate investigation and when Defendants incarcerated and prosecuted Plaintiff knowing that the allegations were "meritless, baseless and wholly unsupported by the evidence." Cmplt. (Dkt. No. 1-1) ¶¶ 28, 29. Plaintiffs further allege that Defendants' actions constituted extreme and outrageous conduct surpassing "all bounds of decency." Id. ¶ 30.

"Under New York law, a claim of intentional infliction of emotional distress requires: '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'" Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)). The alleged conduct "must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." Klinge v. Ithaca Coll., 235 A.D.2d 724, 727, 652 N.Y.S.2d 377, 379-80 (3rd Dep't 1997). Furthermore, the conduct must be "intentionally directed at the plaintiff and lack any reasonable justification." Martin V. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985). A court may determine whether, as a matter of law, the conduct at issue is sufficiently outrageous. See Koulkina v. City of New York, 559 F. Supp. 2d 300, 324 (S.D.N.Y. 2008) (providing an overview of cases).

Here, Plaintiffs have failed to plead a case sufficient to establish a claim for intentional infliction of emotional distress. First, as previously discussed, Plaintiff's arrest was supported by probable cause. Second, even accepting the remainder of Plaintiffs' allegations as true, there is no allegation of behavior that "goes beyond all possible bounds of decency." Gay v. Carlson, 60 F.3d 83, 89 (2d Cir. 1995). The behavior at issue is insufficient to establish this claim. Consequently, Defendants' Motion for summary judgment with respect to Plaintiffs' claim of intentional infliction

13

of emotional distress is granted.

### iii. Derivative Loss of Society and Services

Plaintiffs' Seventh Cause of Action alleges that Kori Kilburn suffered loss of society and companionship due to the actions taken by Defendants against her husband. Cmplt. (Dkt. No. 1-1) ¶¶ 37-40. This claim is entirely derivative of Plaintiffs' other claims and cannot stand alone absent a finding of unlawful injury suffered by Seth Kilburn. In light of the above discussion, it is, therefore, dismissed.

### IV. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 19) is **GRANTED** in its entirety; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1-1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     March 31, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge